UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL A. GRASSMUECK,

                Plaintiff,

    v.

POTALA VILLAGE, LLC,

                Defendant.

CASE NO. C17-0236JLR

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

## I.    INTRODUCTION

Before the court is Plaintiff Michael A. Grassmueck's motion for summary

judgment.  (Mot. (Dkt. # 18).)  Mr. Grassmueck is the court-appointed federal equity

receiver ("Receiver") in *Securities & Exchange Commission v. Path America, LLC, et al.*,

No. C15-1350JLR (W.D. Wash.) ("SEC Action").  In his role as Receiver, Mr.

Grassmueck seeks to recover $914,954.84 from Defendant Potala Village, LLC ("Potala

Village") along with an award of prejudgment interest on that amount.  (*See generally*

Mot.)  Potala Village opposes Mr. Grassmueck's motion.  (*See* Resp. (Dkt. # 25).)  The

court has considered the motion, all submissions filed in support of and in opposition to the motion, and the applicable law. Being fully advised,[1] the court GRANTS Mr. Grassmueck's motion.

## II. BACKGROUND

**A. Mr. Dargey's Fraudulent Scheme and Guilty Plea**

Mr. Losbang Dargey owned and operated Path America SnoCo, LLC, and Path America KingCo, LLC,[2] both of which were EB-5 regional centers approved by the United States Immigration and Citizenship Services ("USCIS"). (1st Scollan Decl. (Dkt. # 21) ¶ 5, Ex. D (attaching Mr. Dargey's plea agreement from *United States v. Losbang Dargey*, No. Cr17-0001RSL (W.D. Wash.) ("the Criminal Action"), Dkt. # 6) ("Plea Agreement") ¶ 7(b).) The EB-5 Program provides that foreign nationals may qualify for United States residency if they make a qualified investment of $500,000.00 or more in a specified project or regional center that is determined to have created or preserved at least 10 jobs in the United States. *See* 8 U.S.C. § 1153(b)(5); 8 C.F.R. §204.6. Using these two USCIS-approved EB-5 regional centers, Mr. Dargey promoted two EB-5 projects to immigrant investors: Path America Farmer's Market ("the PAFM Project") and Potala Tower ("the Tower Project"). (Plea Agreement ¶ 7(c).)

//

---

[1] Mr. Grassmueck requests oral argument. (*See* Mot. at 1.) The court, however, does consider oral argument helpful to its disposition of the motion and denies his request. *See* Local Rules W.D. Wash. LCR 7(b)(4). Potala Village did not request oral argument. (*See* Resp. at title page.)

[2] These entities are now a part of the Receivership in the SEC Action. (Grassmeuck Decl. (Dkt. # 19) ¶¶ 1-2.)

Mr. Dargey made material misrepresentations and omissions in the investment offerings for these two EB-5 projects. (*Id.* ¶¶ 7(d)-(i).) For example, contrary to Mr. Dargey's representations, he fraudulently diverted immigrant investor capital contributions intended for the two EB-5 projects to other non-EB-5 real estate projects that he owned and controlled. (*Id.* ¶ 7(h).) Ultimately, Mr. Dargey pleaded guilty to criminal conduct related to certain matters alleged in the SEC Action, including wire fraud. (*See generally id.*; *see also* 1st Scollan Decl. ¶ 6, Ex. E (attaching Dkt. # 506 from the Criminal Action, which is the Consent to Final Judgment as to Mr. Dargey and Relief Defendant Path Othello).)

**B.       The Related SEC Action**

In a related civil action, the SEC alleged three claims of securities fraud against Mr. Dargey, Path America SnoCo, LLC, Path America KingCo, LLC, and other related entities in violation of (1) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, (2) Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3), and (3) Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2). *See* SEC Action, Compl. (Dkt. # 1) ¶¶ 46-57. Mr. Grassmueck is the court-appointed receiver in the SEC Action for the following entities: (1) Path America, LLC, (2) Path America SnoCo, LLC, (3) Path America Farmer's Market, LP, (4) Path America King Co, LLC, (5) Path America Tower, LP, (5) Path Tower Seattle, LP, (6) Potala Tower Seattle, LLC, (7) Potala Shoreline, LLC, (8) Potala Village Kirkland,

LLC,[3] (9) Dargey Development, LLC, (10) Dargey Enterprises, LLC, (11) Path Farmer's Market, LLC, and (12) Dargey Holdings, LLC (collectively, "the Receivership Entities"). (Grassmueck Decl. ¶¶ 2-3, Exs. A, B); *see also* SEC Action, Dkt. ## 88, 375. Potala Village is not a receivership entity. (*See* Grassmueck Decl. ¶ 3, Exs. A, B.)

## C.  Potala Village

Mr. Dargey created Potala Village for the purpose of acquiring, developing, and operating a mixed-use project located at 1315 Pacific Ave., Everett, Washington ("the Property"). (Ans. (Dkt. # 17) ¶ 8.) Mr. Dargey is a member of and presently holds an approximate 58% majority interest in Potala Village. (Ans. ¶¶ 8-9; 1st Scollan Decl. ¶ 3, Ex. B ("Cohanim Dep.") at 34:1-9.) In 2008, Mr. Dargey sent an offering prospectus to potential investors regarding the Potala Village project. (Cohanim Decl. (Dkt. # 26) ¶ 4, Ex. A.) The Potala Village prospectus stated that one of Mr. Dargey's other businesses, Dargey Enterprises, LLC ("Dargey Enterprises"), would serve as the developer of the Potala Village project.[4] (*Id.* at PVE_0494; Cohanim Dep. at 64:16-20; 1st Scollan Decl. ¶ 7, Ex. F.) The prospectus also stated that the developer fees paid to Dargey Enterprises would be $450,000.00. (Cohanim Decl. ¶ 4, Ex. A at PVE_0504.) Mr. Dargey remained the manager of Potala Village until approximately February 2016. (*See* Cohanim Dep. at 43:13-44:6.)

*//*

---

[3] Potala Village Kirkland, LLC, is distinct from Potala Village—the defendant in this action.
[4] Dargey Enterprises is one of the entities that is part of the Receivership in the SEC Action. (Grassmueck Decl. ¶ 3.)

//

**D.      The Transfer of $914,954.84 to Potala Village**

During September and October 2012, Mr. Dargey caused Dargey Enterprises to transfer a total of $976,954.84 to Potala Village in three transactions.  (1st Scollan Decl. ¶ 8, Ex. G; Gadawski Decl. (Dkt. # 20) ¶ 4, Exs. A, B.)  Potala Village returned just $62,000.00 to Dargey Enterprises, which reduced the balance of the transfers to $914,954.84.  (*See* 1st Scollan Decl. ¶ 8, Ex. G; Gadawski Decl. ¶ 4, Exs. A, B.)

Mr. Grassmueck hired a forensic accountant to trace the origins of the $914,954.84 that Dargey Enterprises transferred to Potala Village.  (*See* Gadawski Decl. ¶¶ 3-6, Exs. A-D.)  Path America Farmer's Market, LP ("PAFM"), another Receivership entity in the SEC Action, transferred funds to Dargey Enterprises before each of the transfers from Dargey Enterprises to Potala Village.  (Gadawski Decl. ¶ 5, Ex. C; *see also* Grassmueck Decl. ¶ 2 (listing PAFM as one of the Receivership entities in the SEC Action).)  First, on September 25, 2012, PAFM transferred $300,000.00 to Dargey Enterprises.  (Gadawski Decl. ¶ 5, Ex. C.)  This $300,000.00 transfer enabled Dargey Enterprises to transfer $200,000.00 to Potala Village on the same day.  (*Id.*)  Next, on October 9, 2012, PAFM transferred $170,000.00 to Dargey Enterprises.  (*Id.*)  This $170,000.00 transfer enabled Dargey Enterprises to transfer $167,000.00 to Potala Village on the same day.  (*Id.*)  Finally, on October 30, 2012, PAFM transferred $609,000.00 to Potala Village directly but on behalf of Dargey Enterprises.  (*Id.*)  Both Potala Village and Dargey Enterprises reported these funds as owing from Potala Village to Dargey Enterprises.  (*Id.*)

//

In addition, PAFM's transfers to Dargey Enterprises and Potala Village occurred after receiving deposits of immigrant investor funds. (*Id.*) Before receiving the immigrant investor funds, the PAFM bank account balance was only $11,174.85, and prior to the transfers by PAFM to Dargey Enterprises, the Dargey Enterprises bank account contained only $2,218.77. (*Id.*) Thus, the deposit of immigrant investor funds into PAFM enabled PAFM to transfer funds to Dargey Enterprises, which in turn enabled Dargey Enterprises to transfer $914,954.84 to Potala Village. (*Id.*) Therefore, the $914,954.84 at issue here is directly traceable to immigrant investor funds. (*See id.*)

**E.     The 2012 Note**

Mr. Dargey, acting in his capacity as the sole manager of both Potala Village and Dargey Enterprises, executed a promissory note pursuant to which Potala Village promised to repay $914,954.84 to Dargey Enterprises, interest-free, upon the sale of the Potala Village project. (*See* Vecchio Decl. (Dkt. # 27) ¶ 4, Ex. I.) The promissory note purports to have an execution date of October 9, 2012 ("the 2012 Note"). (*Id.* at PVE_0003.) However, Mark Reichlin, Potala Village's Federal Rule of Civil Procedure 30(b)(6) deponent,[5] testified during his deposition that (1) he had never seen the 2012 Note until the onset of the present litigation, (2) except for Mr. Dargey, none of the members of Potala Village knew that such a promissory note existed at the time, (3) the

//

//

---

[5] (*See* 1st Scollan Decl. ¶ 2, Ex. A (attaching Notice of Deposition, Topic No. 8 ("The execution of the 2012 Note and 2015 Note")).)

2012 Note may not have existed at that time, and (4) the 2012 Note appeared to have been created after-the-fact for Mr. Dargey's benefit.[6]   (2d Scollan Decl. (Dkt. # 29) ¶ 2,

//

//

---

[6] Mr. Reichlin testified as follows:

**Q:** . . . Okay.  Let me have you look at what we marked as Exhibit 4 in the prior deposition.  And this is the – it's labeled "Promissory Note," with a signature date of October 9, 2012.  Have you seen this document before?

**A:** I have recently seen this document. . . . This document was never circulated to the membership.

**Q:** . . . Have you seen – when you say you've seen this recently, is that in conjunction with the litigation that's going on?

**A:** Yes.

**Q:** . . . So in 2012 you never saw this document?

**A:** No.

**Q:** . . . Did you ever have any discussion with [Mr. Dargey] about a promissory note between Potala Village and Dargey Enterprises?

**A:** To the best of my knowledge, nobody in membership is – was aware of any promissory note, that a promissory note existed. . . . It may not have.

                                        ************

**A:** And this document looks to me like it was prepared not for the company but for [Mr. Dargey's] own records . . . . This looks to me like a document that was prepared so that he could submit it to a lender to show that he had outstanding money out there somewhere.

**Q:** . . . So . . . to kind of create something formal that he could provide to lenders and bankers that would document money that had probably already changed hands?

**A:** To doc – I mean, yes.  Assuming he has a financial statement, the financial statement says that the company owes him $900,000[.00], then the lender would say, "Oh, give me a copy of the note."

**Q:** Right.

**A:** So that could have happened – you know – well, it probably was prepared before this email went out.

**Q:** I think I understand what you're saying.  Okay.  But as to the amounts referenced in here, you haven't done any kind of, as you called it, cash tracking or cash –

**A:** Cash-flow analysis.

**Q:** Cash-flow analysis?

**A:** That's correct.

(Reichlin Dep. at 36:2-37:3, 39:12-40:19.)

Ex. J ("Reichlin Dep.")[7] at 36:2-37:3, 39:12-40:7.)  Indeed, the 2012 Note contains a

facially apparent backdating error.  The 2012 Note purports on its face to have an

execution date of October 9, 2012.  (Vecchio Decl. ¶ 4, Ex. I at PVE_0003.)  The 2012

Note also recites that Potala Village "received $609,954.84 (minus $62,000[.00] for a

HUD approved funds swap with the management company) . . . ."  (*Id.* at PVE_0001.)

Yet, Potala Village did not receive the $609,954.84 until October 30, 2012, and did not

transfer the $62,000.00 back to Dargey Enterprises until November 15, 2012.  (2d

Scollan Decl. ¶ 8, Ex. G.)  Both of these events occurred weeks after the 2012 Note's

purported October 9, 2012, execution date.

     Mr. Grassmueck issued an interrogatory to Potala Village asking it to "[s]tate any

value that [Potala Village] provided in exchange for the $914,954.84 (as identified in the

2012 Note) . . . ."  (1st Scollan Decl. ¶ 10, Ex. I (attaching Mr. Grassmueck's

interrogatories to Potala Village and Potala's responses thereto) at 3-4.)  In response,

Potala Village did not identify any contemporaneous item of value, including the 2012

Note, and "dispute[d]" the "assumption" that Potala Village "received $914,954.84

pursuant to the 2012 Note."[8]  (*Id.* (capitalization in original omitted).)

<hr />

[7] Portions of Mr. Reichlin's deposition also appear as an exhibit to Daniel J. Vecchio's declaration.  (*See* Vecchio Decl. (Dkt. # 27) ¶ 2, Ex. G).  The court will simply reference Mr. Reichlin's deposition as "Reichlin Dep." irrespective of where it is found in the record.

[8] Specifically, Potala Village responded to Interrogatory No. 3 as follows:

. . . [Potala Village] . . . objects to this request as it assumes [Potala Village] received $914,954.84 pursuant to the 2012 NOTE, an assumption [Potala Village] disputes. . . . Without waiving its objections, [Potala Village] states that Dargey Enterprises received $920,000[.00] in developer fees from [Potala Village] when it was only due $450,000[.00], per the original offering documents for the Potala

During discovery, Potala Village also repeatedly disclaimed any obligation under the 2012 Note. In Interrogatory No 7, Mr. Grassmueck asked: "Who negotiated the alleged reduction of the balance due on the 2012 Note?" (1st Scollan Decl. ¶ 10, Ex. I at 5.) Potala Village responded by objecting to the interrogatory "to the extent that it assumes that [Potala Village] had any obligation under the 2012 Note, . . . an assumption [Potala Village] disputes." (*Id.*) Similarly, in response to Interrogatory No. 1 regarding payments made under the 2012 Note, Potala Village stated that it "does not agree that it has or had any payment obligations under the 2012 Note . . . ."[9] (*Id.* at 2.)

Finally, in its answer to Mr. Grassmueck's complaint, Potala Village expressly denied that the transfers of funds at issue in this suit "were documented as promissory notes." (*See* Compl. (Dkt. # 1) ¶ 11 ("The Receivership Entities provided funds to Defendant. The transfers of funds were documented as promissory notes."); Ans. (Dkt. # 17) ¶ 11 ("Answering paragraph 11 of the Complaint, [Potala Village] denies any and all allegations therein.").)

**F.     The 2015 Note**

In 2013, members of Potala Village discovered that—contrary to statements in the prospectus, which limited the amount of developer fees to $450,000.00—Mr. Dargey had

---

Village Everett project. The parties agreed that the extra $470,000[.00] would be considered as payment toward the amounts Dargey Enterprises allegedly loaned [Potala Village], thus reducing the balance of any obligation of $444,955[.00].

(1st Scollan Decl. ¶ 10, Ex. I at 3-4.)

[9] Potala Village also objected to Mr. Grassmueck's requests for admission concerning the 2012 Note "to the extent [they] assume[] the Promissory Note dated October 9, 2012[,] was a valid obligation." (2d Scollan Decl. ¶ 3, Ex. K at 2.)

in fact caused Potala Village to pay approximately $920,000.00 in such fees either to Dargey Enterprises or to Mr. Dargey himself.  (Resp. at 5 (citing Cohanim Decl. ¶ 5, Ex. B at PVE_0423; Reichlin Dep. at 19:19-20:14; 21:20-24:13).)  The members of Potala Village confronted Mr. Dargey, and Mr. Dargey and Dargey Enterprises agreed to correct the issue by treating Potala Village's overpayment as a partial repayment of the 2012 Note.  (Cohanim Decl. ¶ 6, Ex. C (attaching an email string that discusses both the developer fee and the reduction of amount due under the 2012 Note).)

On February 27, 2015, Mr. Dargey, as the manager of Potala Village, executed a new promissory note from Potala Village in favor of Dargey Enterprises.  (1st Scollan Decl. ¶ 9, Ex. H ("the 2015 Note").)  Mr. Dargey did not circulate the 2015 Note to the other Potala Village members at the time of execution or inform them that he had executed the 2015 Note until months later.  (Resp. at 6 (citing Reichlin Dep. at 41:12-43:19, 46:18-47:15); Cohanim Decl. ¶ 8, Ex. E.)  The 2015 Note stated the principal amount of the loan as $444,954.84.  (*See* Cohanim Decl. ¶ 8, Ex. E.)  The 2015 Note has a stated execution date of February 27, 2015, and a maturity date of February 29, 2016.  (*Id.* at PVE_0231, PVE_0238.)  Unlike the 2012 Note, which was interest-free (*see* Vecchio Decl. ¶ 4, Ex. I), the 2015 Note provides for interest at 3% annum, compounded annually on each anniversary date of the note (Cohamin Decl. ¶ 8, Ex. I).  After the maturity date, the 2015 Note provides for interest at the rate of the lesser of 10% annum or the highest rate permitted by applicable law.  (*Id.*)  The maturity date has passed, and Potala Village has made no payments on the 2015 Note.  (Cohanim Dep. at 69:16-70:2, 68:23-25; Ans. ¶¶ 14, 16.)

The 2015 Note itself does not reference the 2012 Note, indicate that the 2015 Note supersedes the 2012 Note, or state that it reduces the principal amount owed on the 2012 Note. (*See generally* 1st Scollan Decl. ¶ 9, Ex. H.) Nevertheless, Potala Village asserts in its response to Mr. Grassmueck's motion that "it was clearly intended to replace the 2012 Note . . . for it reflected the precise balance owed on the 2012 Note . . . and identified no other consideration for that amount."[10] (Resp. at 6.)

Potala Village asserts that, in June 2016, Dargey Enterprises agreed to cap payment of the 2015 Note, including principal and interest, at $500,000.00. (Cohanim Dep. at 76:14-77:9.) The agreement to cap the 2015 Note was an oral agreement between Mr. Dargey and Mr. Cohanim, who was serving as the managing member of Potala Village at the time. (*Id.* at 81:7-13; *see also* Vecchio Decl. ¶ 13.) The only written document memorializing the oral agreement is an August 19, 2016, email from Mr. Cohanim to Mr. Dargey and others, in which Mr. Cohanim states that "[Mr. Dargey] will accept a cap on interest for Dargey Enterprises's promissory note whereby the note will be considered paid in full at $500K." (Cohanim Decl. ¶ 9, Ex. F.)

**G.    The Receivership and this Lawsuit**

On July 15, 2016, the court in the SEC Action placed Dargey Enterprises into the Receivership. (Grassmueck Decl. ¶ 3, Ex. B.) Mr. Grassmueck filed this action on behalf of the Receivership on February 15, 2017. (*See* Compl. (Dkt. # 1).) Mr.

//

----

[10] Potala Village asserts that "[b]ased on discussions with [Mr. Dargey's] counsel," if given the opportunity to testify, Mr. Dargey would confirm that he intended the 2015 Note to modify and amend the 2012 Note. (Resp. at 6 n.3; Vecchio Decl. ¶ 13.)

Grassmueck seeks summary judgment of the entire amount of Dargey Enterprises's transfers to Potala Village, plus prejudgment interest. (*See generally* Mot.) He argues that the Receivership is entitled to the return of all the transfers at issue under Washington's Uniform Fraudulent Transfer Act ("UFTA"), based on (1) actual fraud, RCW 19.41.041(a)(1), and (2) constructive fraud, RCW 19.41.041(b).[11] (*Id.* at 5-7.) Mr. Potala also argues that the Receivership is entitled to recoup the transfers based on a theory of unjust enrichment. (*Id.* at 7-9.) Potala Village opposes Mr. Grassmueck's motion and argues that at most the Receiver is entitled to recoup $500,000.00 in full satisfaction of the 2015 Note, but no more. (*See generally* Resp.; *id.* at 8 ("Potala believes that the Receiver—on behalf of [Dargey] Enterprises—is entitled to $500,000[.00] in full satisfaction of the 2015 Note . . . .").) The court now considers Mr. Grassmueck's motion.

### III. ANALYSIS

**A. Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

---

[11] In 2017, Washington renamed UFTA the Uniform Voidable Transactions Act and amended certain UFTA provisions. *See* RCW 19.40.900. The prior version of UFTA applies to transfers and obligations made before July 23, 2017, *see* RCW 19.40.905; thus, the prior version of UFTA applies here. All references to UFTA in this decision are to the prior version.

factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Id.* at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**B. UFTA Claim**

Mr. Grassmueck asserts that he is entitled to summary judgment under two separate provisions of UFTA. (Mot. at 5-7.) Mr. Grassmueck argues that there is no genuine issue of material fact that Mr. Dargey made transfers at issue here to Potala

Village with "actual intent to . . . defraud" under RCW 19.40.041(a)(1).  (Mot. at 5-6 (citing RCW 19.40.041(a)(1)).)  Second, Mr. Grassmueck argues that there is no genuine issue of material fact that the transfers at issue were constructively fraudulent under RCW 19.40.041(a)(2).  (*Id.* at 6-7.)  Because the court grants summary judgment under RCW 19.40.041(a)(1)—UFTA's actual intent to defraud provision—the court does not consider Mr. Grassmueck's motion based on RCW 19.40.041(a)(2)—UFTA's constructive fraud provision.

    1.  <u>Actual Intent to Defraud</u>

        Under the pertinent portion of RCW 19.40.041(a)(1), "[a] transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . [w]ith actual intent to . . . defraud any creditor of the debtor."  RCW 19.40.041(a)(1).  Mr. Grassmueck argues that there is no genuine material factual dispute that the transfers at issue were made with actual intent to defraud creditors.  (Mot. at 5.)  Indeed, in his Plea Agreement, Mr. Dargey acknowledged that he "knowingly . . . failed to contribute any funds to the [PAFM and Tower] projects as equity" and "used portions of the EB-5 investors' $500,000[.00] capital contributions for purposes other than the construction of the PAFM Project and Tower Project."  (Plea Agreement ¶ 7(g).)  He also acknowledged that "contrary to his representations" he "used a portion of the immigrant investors' $500,000[.00] capital contributions for the PAFM Project and Tower Project . . . to divert $16.8 million other non-EB-5 real estate projects [Mr. Dargey] owned and controlled, including his Kirkland, Shoreline, and Othello projects."  (*Id.* ¶ 7(h).)  Mr. Grassmueck argues that these admissions satisfy the statutory requirement for demonstrating "actual

intent to . . . defraud," and he is therefore entitled to summary judgment on this issue. (Mot. at 5-6.)

Under UFTA, "actual intent to defraud must be demonstrated by 'clear and satisfactory proof.'" *Sedwick v. Gwinn*, 873 P.2d 528, 531 (Wash. Ct. App. 1994) (quoting *Clearwater v. Skyline Constr. Co. Inc*., 835 P.2d 257, 266 (Wash. Ct. App. 1992)). Potala Village argues that Mr. Grassmueck fails to meet this standard of proof on summary judgment because, although Mr. Dargey's Plea Agreement specifically references his Kirkland, Shoreline, and Othello projects, it does not specifically mention the transfers at issue here. (Resp. at 11-12.) Mr. Dargey's admission, however, was not limited to those three projects. (*See* Plea Agreement ¶ 7(h).) Mr. Dargey admitted that the investment offerings for his two EB-5 projects—the PAFM Project and the Tower Project—did not allow use of project funds for non-EB-5 real estate projects. (*Id.* ¶¶ 7(f)-(h).) Yet, undisputed evidence demonstrates that is exactly what happened here. *See supra* § II.D. The deposit of immigrant investor funds into PAFM proceeded PAFM's transfers to Dargey Enterprises and Potala Village. *See id.* The deposit of funds from PAFM to Dargey Enterprises in turn allowed Dargey Enterprises to transfer the funds at issue to Potala Village. *See id.* Further, it is undisputed that Mr. Dargey controlled all of the entities involved in the transfers at issue, including PAFM, Dargey Enterprises, and Potala Village, during the relevant time period. (*See* Grassmueck Decl. ¶ 4 (stating that Mr. Dargey was in control of the Receivership entities, which includes PAFM and Dargey Enterprise, at the time of the transfers); Cohanim Dep. at 43:13-44:6; Cohanim Decl. ¶ 2; Plea Agreement ¶ 7(a)). Although Mr. Dargey's Plea Agreement

provides three specific examples—"his Kirkland, Shoreline, and Othello projects"—the court agrees with Mr. Grassmueck that Mr. Dargey's admission of fraudulent intent applies to all such transfers, including those to Potala Village.

Although UFTA does not require direct evidence of intent, and expressly contemplates the use of circumstantial evidence to prove fraudulent intent, *see* RCW 19.40.041(b)(1)-(11), Mr. Dargey's Plea Agreement is, in fact, a rare example of direct evidence of fraudulent intent. Further, this direct evidence of fraudulent intent is supported by compelling circumstantial evidence—including the source, timing, and nature of the transfers at issue—that the fraud to which Mr. Dargey admitted is exactly what happened here. *See supra* § II.D. Thus, the court concludes that Mr. Grassmueck provides the requisite "clear and satisfactory proof" on summary judgment of actual intent to defraud under RCW 19.40.041(a)(1).

2. Potala Village's Arguments in Response

Potala Village offers a variety of arguments in opposition to summary judgment. (*See generally* Resp.) The court will address each argument in turn and explain why the argument or evidence offered does not defeat the entry of summary judgment on Mr. Grassmueck's UFTA claim under RCW 19.40.041(a)(1).

a. *Mr. Dargey's Anticipated Testimony*

Potala Village asserts in a footnote that it "anticipate[s] that if called to testify, [Mr.] Dargey will deny he had any fraudulent intent in connection with the loan from Enterprises to Potala [Village]." (Resp. at 12 n.6; *see also id.* at 6 n.3.) The hope that a witness will provide favorable testimony at trial in apparent contravention to the

statements in his Plea Agreement does not create a genuine issue of material fact capable of defeating summary judgment. Instead, it amounts to nothing more than an attempt to create "some metaphysical doubt as to the material facts." *Scott*, 550 U.S. at 380. Such speculation about how a witness might testify is insufficient to defeat a motion for summary judgment. *Young v. Nooth*, No. 3:10-CV-00479-PK, 2012 WL 3230454, at *2 (D. Or. Mar. 30, 2012), *report and recommendation adopted*, No. 3:10-CV-00479-PK, 2012 WL 3230478 (D. Or. Aug. 3, 2012), *aff'd*, 539 F. App'x 710 (9th Cir. 2013) ("[A party] must present sufficient probative evidence before trial to defeat defendants' motion for summary judgment; . . . speculation about what a witness might say does not suffice."); *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1270 (D. Nev. 2001) (ruling that speculation that a party would be able to elicit testimony at trial supporting her claim, without supporting testimony in the form of depositions or affidavits, was insufficient to defeat a summary judgment motion); *see Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Thus, Potala Village's speculation about Mr. Dargey's possible trial testimony is insufficient to defeat summary judgment.

      *b.  Potala Village's Request for a Rule 56(d) Continuance to Take Additional Discovery*

     In a single sentence in its conclusion, Potala Village also "requests pursuant to [Federal Rule of Civil Procedure] 56(d) that it be given the opportunity to obtain a declaration from . . . [Mr.] Dargey before the [c]ourt renders its decision." (Resp. at 15.)

"Compliance with [Rule 56(d)] requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery." *Adams v. Allstate Ins. Co*., 187 F. Supp. 2d 1207, 1213 (C.D. Cal. 2002). Here, the case schedule required the parties to complete discovery by March 12, 2018, and to file all discovery related motions no later than February 9, 2018. (Sched. Order (Dkt. # 16) at 1.) If Potala Village wanted to obtain a declaration from Mr. Dargey or to depose him, it should have done so prior to March 12, 2018, or provided the court with an explanation for its failure to do so. (*See generally* Resp.) Indeed, "[f]ailing to diligently pursue discovery in the past is sufficient reason to deny further discovery." *Long v. Playboy Enterprises Int'l, Inc*., 565 F. App'x 646, 648 (9th Cir. 2014) (citing *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 921 (9th Cir. 1997)).

In any event, the court would need to amend the case schedule before it could authorize Potala Village to conduct further discovery, since the discovery cutoff and the deadline for discovery motions have both passed. (*See* Sched. Order at 1.) The fact that the discovery cutoff has passed is sufficient grounds for denying Potala Village's Rule 56(d) motion. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026-27 (9th Cir. 2006) (holding that the district court did not abuse its discretion in denying a request to reopen discovery to obtain highly probative testimony where counsel made a strategic decision not to preserve that testimony in the pretrial record); *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1117-18 (9th Cir. 1999) (noting that the party's failure to timely move to compel discovery, despite knowing about the other party's refusal to

//

produce documents, was grounds to not allow additional discovery under Rule 56(f));[12]

*Hauser v. Farrell*, 14 F.3d 1338, 1340-41 (9th Cir. 1994) (affirming the denial of a Rule 56(f) motion in light of the party's failure to depose the witness during the 27 months between the start of the litigation and the close of discovery).

Even if the court were to construe Potala Village's request as a Federal Rule of Civil Procedure 16(b) motion to modify and extend the case scheduling order, the court would still deny it. Modification of the case scheduling order requires a minimum showing of "good cause." *See* Fed. R. Civ. P. 16(b). Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification[;] [i]f that party was not diligent, the inquiry should end." *Id.* (internal citations omitted). Moreover, where a motion is made to extend a deadline after the deadline has expired, the movant must show excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Examined against these standards, and in the absence of any explanation from Potala Village concerning its failure to obtain the requested discovery during the discovery period (*see* Resp.), the court concludes Potala Village fails to demonstrate either good cause to extend the discovery deadline or excusable neglect. Accordingly,

---

[12] Rule 56(d) was formerly Rule 56(f). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56, Committee Notes on Rules—2010 Amendment. Precedent under Rule 56(f) applies to Rule 56(d). *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011).

the court denies Potala Village's Rule 56(d) motion for a continuance to conduct

additional discovery.

       *c. The Payment of Developer Fees*

       Next, Potala Village argues that it paid Dargey Enterprises $805,000.00 in

developer fees as of 2010 (*see* Cohanim Decl. ¶ 5, Ex. B at PVE_0423), and thus, it is "at

least conceivable" that the transfers at issue from Dargey Enterprises were funded by

Potala Village itself (*see* Resp. at 12). However, the undisputed evidence is that prior to

the 2012 transfers at issue here PAFM's bank account balance consisted of only

$11,174.85 and Dargey Enterprises' bank account balance was only $2,218.77.

(Gadawski Decl. ¶ 5, Ex. C.) Thus, it was the deposit of immigrant investor funds into

PAFM's bank account that allowed the transfers from PAFM to Potala Village via

Dargey Enterprises to occur. (*See id.*) Irrespective of any payments that Potala Village

may have made to Dargey Enterprises in 2010, those funds were no longer in Dargey

Enterprises' bank account prior to the transfers in 2012. (*See id.*) Thus, evidence related

to Potala Village's 2010 payments of developer fees to Dargey Enterprises does not raise

a triable issue of fact and is irrelevant in light of the foregoing evidence concerning

PAFM's and Dargey Enterprises' bank account balances in 2012.

       In any event, "UFTA does not require that the [c]ourt trace money in this way."

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. CIV.A. 09-2751, 2011 WL

6088611, at *8 n.85 (E.D. Pa. Dec. 7, 2011); *see also Nwokedi v. Unlimited Restoration

Specialists, Inc.*, 428 S.W.3d 191, 209 (Tex. App. 2014) ("UFTA does not require the

creditor to trace specific funds, but rather, to prove that a transfer of assets occurred and

that the debtor transferred the assets with the intent to hinder, delay, or defraud its

creditor.").[13] Rather, what is material is whether the transfers at issue were made with

actual intent to defraud a creditor. *See id.*; *see also* RCW 19.40.041(a)(1). The court

finds that they were. *See supra* § III.B.1. Accordingly, evidence that Potala Village paid

Dargey Enterprises $805,000.00 in developer fees in 2010 does not defeat summary

judgment in Mr. Grassmueck's favor.

### d. The 2012 Note

To the extent that Potala Village relies on the existence of the 2012 Note to argue

that a triable issue of fact prevents the court from entering summary judgment, the court

disagrees.[14] Potala Village argues that the transfers at issue were "an ordinary loan of

funds from Dargey Enterprises to Potala [Village]" that represented "equivalent value in

//

//

---

[13] When interpreting UFTA, the court construes its provisions "to effectuate its general purpose" and "to make uniform the law with respect to the subject of this chapter among states enacting it." RCW 19.40.903. "Thus, it is appropriate to look not only to decisions by courts of this state, but also to those of other states operating under the UFTA." *Thompson v. Hanson*, 239 P.3d 537, 539 (Wash. 2009).

[14] Potala Village only expressly raises the "equivalent value" of the 2012 Note in response to Mr. Grassmueck's claim under the constructive fraud provision of UFTA, RCW 19.40.041(a)(2) (*see* Resp. at 9-11), which is a claim that the court does not reach. Potala Village does not raise the 2012 Note in its response to Mr. Grassmueck's claim under UFTA's actual intent to defraud provision, RCW 19.40.041(a)(2). (*See* Resp. at 11-2.) Whether the 2012 Note represents "a reasonably equivalent value" also could be relevant to a "good faith" defense under RCW 19.40.081(1). However, Potala Village never raises such a defense. (*See generally* Resp.) In any event, as discussed in this section, even if the 2012 Note is somehow relevant to Mr. Grassmueck's UFTA claim under RCW 19.40.041(a)(1), the court concludes that Potala Village disavowed any connection between the 2012 Note and the transfers at issue here and that it had any obligation under the Note, and the court also concludes that the 2012 Note does not represent reasonably equivalent value for purposes of UFTA.

exchange for the [t]ransfers." (Resp. at 10.) As discussed below, undisputed facts and Potala Village's own admissions belie that assertion.

Contrary to its present assertions, in response to interrogatories from Mr. Grassmueck, Potala Village failed to identify any item of "value" that it had provided to Dargey Enterprises in exchange for the transfers at issue—including the 2012 Note or the 2015 Note. (1st Scollan Decl. ¶ 10, Ex. I at 3-4.) Moreover, Potala Village specifically disputed the assumption embedded in the interrogatory that Potala Village "received $914,954.84 pursuant to the 2012 N[ote]." (*Id.*) Potala Village also repeatedly disclaimed any obligation under the 2012 Note in its interrogatory responses. (*Id.* at 2, 5; *see also* 2d Scollan Decl. ¶ 3, Ex. K at 2.)

A court may consider a party's responses to interrogatory questions in deciding a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). However, unlike responses to requests for admission or statements in a party's pleadings, responses to interrogatories are not ordinarily considered binding on a party. *See Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir. 1982) (stating that "[i]nterrogatories do not supersede or supplement pleadings nor do they bind parties as an allegation or admission in a pleading or pre-trial order"); *Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968) (holding that answers to interrogatories are not given the same binding effect conferred on responses to requests for admission). Indeed, "[w]hen there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and resolve the conflict." *Victory Carriers*, 388 F.2d at 959.

Here, however, there is no conflict.  Discovery has closed (*see* Sched. Order at 1), and

Potala Village has verified its responses and never sought to supplement or amend them

(1st Scollan Decl. ¶ 10, Ex. I at 8).  Potala Village further failed to identify any

deposition testimony that conflicts with their interrogatory responses.[15]  (*See* Resp. at 4-5,

11-12.)  Thus, the court concludes that in this instance, Potala Village is bound by its

interrogatory responses.  *See Valentich v. United States*, 194 F. Supp. 3d 1033, 1037

(E.D. Cal. 2016) (concluding that because the "[p]laintiff signed the answers and has

never amended the response to [the] interrogatory . . . [,] [h]er concession is accepted as

the truth, and thus, no genuine dispute of material fact exists . . . .").

　　　　In addition to its interrogatory answers, however, Potala Village made a relevant

binding admission in its answer to Mr. Grassmueck's complaint.  "Factual assertions in

pleadings . . . , unless amended, are considered judicial admissions conclusively binding

on the party who made them."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226

(9th Cir. 1988).  "Such admissions, which 'have the effect of withdrawing a fact from

issue and dispensing wholly with the need for proof of the fact,' are binding on both the

parties and the court."  *United States v. Davis*, 332 F.3d 1163, 1168 (9th Cir. 2003)

(quoting *Lacelaw*, 861 F.2d at 226).  This rule extends to facts admitted by a party in its

//

_____

[15] Indeed, the only deposition testimony presented to the court is consistent with Potala Village's disavowal of the 2012 Note in its interrogatory responses.  Specifically, Potala Village's Rule 30(b)(6) deponent testified that (1) he had never seen the 2012 Note prior to the onset of this litigation, (2) none of the members of Potala Village knew of the existence of the 2012 Note at that time, (3) the 2012 Note may not have existed at the time, and (4) the 2012 Note appeared to have been created after the fact for Mr. Dargey's benefit.  (Reichlin Dep. at 36:2-37:3, 39:12-40:19.)

answer.  *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d 1235, 1240 (W.D. Wash. 2014) (citing *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the [party] throughout this litigation.")).  In its answer to Mr. Grassmueck's complaint, Potala Village expressly denied that the transfers of funds at issue here "were documented as promissory notes."  (*See* Compl. ¶ 11 ("The Receivership Entities provided funds to Defendant.  The transfer of funds were documented as promissory notes."); Ans. ¶ 11 ("Answering paragraph 11 of the Complaint, [Potala Village] denies any and all allegations therein.").)  Potala Village never amended its answer (*see generally* Dkt.), and its denial that the transfers were memorialized or documented as promissory notes is a binding admission in this circumstance, *see Lacelaw*, 861 F.2d at 226 ("A statement in a[n] . . . answer . . . is a judicial admission . . . .").

Finally, even if Potala Village had not repeatedly disavowed the 2012 Note, the 2012 Note does not represent equivalent value for the transfers.  The 2012 Note provided that it was interest free and only due upon the sale of Potala Village.  (Vecchio Decl. ¶ 4, Ex. I.)  In *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4855416, at *8 (N.D. Ill. Nov. 10, 2008), the court examined whether a loan remarkably similar to the 2012 Note provided reasonably equivalent value for purposes of Illinois's UFTA.  The court initially examined transfers made in exchange for services and found that they tended to show reasonably equivalent value.  *Id.* at *7.  Turning to a $305,000.00 transfer, the court stated:

//

The Court cannot say the same regarding the $305,000[.00] that Cuppy caused the RPP Finance Trust to transfer to Dynamic. Cuppy's characterization of this loan is somewhat suspect, but even if the characterization is accurate, it was an interest-free loan for an indefinite term, made by and to the person who had control of the trust's assets at his apparent whim, without any documentation of an obligation to repay. Nor was there any apparent benefit to the trust or its beneficiaries from making the "loan."

*Id.* at *8. Like the loan in *Dexia Credit Local*, the 2012 Note was interest-free and for an indefinite term with the triggering event—the sale of Potala Village—entirely in the hands of the borrower, Potala Village. Further, the 2012 Note was executed by Mr. Dargey as both the transferor—Darey Enterprises—and the transferee—Potala Village. (*See* Vecchio Decl. ¶ 4, Ex. I at PVE_0003.) As a result, similar to the court in *Drexia Credit Local*, this court also concludes that the 2012 Note provided no apparent benefit to Dargey Enterprises, and Mr. Dargey executed the 2012 Note to assist in concealing his actual intent to defraud PAFM and the immigrant investors of the transfers at issue here. Thus, the court concludes that the 2012 Note does not create an issue of fact precluding summary judgment on Mr. Granssmueck's UFTA claim.

> *e. The 2015 Note*

Potala Village also argues that any liability it owes to Dargey Enterprises is capped by the 2015 Note. (*See* Resp. at 8 ("Potala [Village] believes that the Receiver—on behalf of [Dargey] Enterprises—is entitled to $500,000[.00] in full satisfaction of the 2015 Note as agreed by [Dargey] Enterprises and Potala [Village] in June 2016.").) Potala Village argues that the 2015 Note memorialized an agreement between Dargey Enterprises and Potala Village to offset Potala Village's apparent $470,000.00 overpayment of developer fees by reducing the total amount that Potala Village owed to

Dargey Enterprises under the 2012 Note from $914,954.84 to $444,955.00. (Resp. at 8-9.) Indeed, Potala Village points to references in the record indicating that Mr. Dargey acknowledged this reduction in the amount purportedly owing on the 2012 Note. (*See* Resp. at 4-5 (citing Vecchio Decl. ¶ 7, Ex. L at PVE_0013; *id.* ¶ 6, Ex. K at PVE_0028; *see id.* ¶ 11, Ex. P at PVE_0035, PVE_0043).) Although these references concern a reduction in the amount Mr. Dargey asserts is due under the 2012 Note, they do not expressly refer to the 2015 Note. (*See id.*) Further, as noted above, the 2015 Note itself does not reference the 2012 Note, expressly discharge it, or indicate that the 2015 Note supersedes the 2012 Note or reduces the principal purportedly owed on the 2012 Note. (*See* 1st Scollan Decl. ¶ 9, Ex. H.) Moreover, Potala Village acknowledges that it is unclear if the overpayment of development fees, on which the reduction of the balance of was premised, actually went to Dargey Enterprises or to Mr. Dargey himself. (*See* Resp. at 5.)

In any event, as discussed above, Potala Village made a binding admission in its answer by denying that the transfers at issue here were documented as promissory notes. (*See* Compl. ¶ 11; Ans. ¶ 11.) The allegation in the complaint was phrased in the plural: "The transfers of funds were documented as promissory notes." (Compl. ¶ 11.) Potala Village's statement denying this allegation did not exclude the 2015 Note. (Ans. ¶ 11.) Thus, Potala Village's statement denying that the transfers at issue were documented as promissory notes precludes its reliance here on the 2015 Note to reduce its liability to Mr. Grassmueck on his UFTA claim.

*//*

Finally, under Potala Village's theory, the legitimacy and applicability of the 2015 Note is necessarily predicated upon the legitimacy and applicability of the 2012 Note. As discussed above, *see supra* § III.B.2.d, Potala Village expressly disputed in its discovery responses that it "received $914,954.84 pursuant to the 2012 Note" (1st Scollan Decl. ¶ 10, Ex. I at 3-4) and also repeatedly disclaimed any obligation under the 2012 Note (*id.* at 2, 5; *see also* 2d Scollan Decl. ¶ 3, Ex. K at 2). Logically then, if Potala Village had no obligation under the 2012 Note and the 2012 Note was not related to the transfers at issue, then any reduction in the amount owed in the 2012 Note as a result of the 2015 Note would likewise be inapplicable to the transfers at issue here. The court concludes, based on the foregoing, that the 2015 Note does not raise a genuine issue of fact so as to avoid the entry of summary judgment on Mr. Grassmueck's UFTA claim.

In sum, the court concludes that Mr. Grassmueck is entitled to summary judgment on his UFTA claim and that none of the arguments Potala Village raises in contravention prohibit the court's entry of summary judgment. UFTA provides that a creditor may obtain a judgment for the value of the fraudulently transferred asset. *See* RCW 19.40.081(b). The court agrees that Mr. Grassmueck is entitled to summary judgment in favor of the Receivership that includes the value of the transfers at issue here, totaling $914,954.84.

## C.  Unjust Enrichment

Mr. Grassmueack argues, in the alternative, that he is entitled to summary judgment on behalf of the Receivership on a theory of unjust enrichment. (Mot. at 7-9.) "Unjust enrichment occurs when one retains money or benefits which in justice and

equity belong to another." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991), *amended sub nom. Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.*, 814 P.2d 699 (Wash. Ct. App. 1991). "Three elements must be established in order to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (quoting *Bailie Commc'ns*, 810 P.2d at 18).

The first element—a benefit conferred upon Potala Village by Dargey Enterprises—is satisfied because Dargey Enterprises transferred the funds at issue here and Potala Village received the transfers. *See supra* § II.D. The second element— knowledge by Potala Village of the transfers—is met because Potala Village recorded the transfers in its books. (*See, e.g.*, 1st Scollan Decl. ¶ 8, Ex. G (attaching report entitled "Register: <u>Due to Dargey Enterprises</u>, From 01/01/2008 to 07/20/2017"); Reichlin Dep. at 28:6-11). In addition, Mr. Dargey was the managing member of and controlled both Dargey Enterprises and Potala Village at the time of the transfers. (*See* Cohanim Dep. at 43:13-44:6; Cohanim Decl. ¶ 2; Plea Agreement ¶ 7(a).) The third element— circumstances that make it inequitable to retain the benefit without the payment of its value—is also met. As discussed at length above, Mr. Dargey made the transfers from entities he controlled—PAFM and Dargey Enterprises—to another entity he controlled— Potala Village. *See supra* § II.D. The monies that PAFM and Dargey Enterprises

transferred were immigrant investor funds, which were intended to fund EB-5 projects through which those immigrant investors had the opportunity to qualify for United States residency. *See supra* §§ II.B, D.  Further, Mr. Dargey has admitted that he fraudulently diverted immigrant investor capital contributions from qualifying EB-5 projects to other non-EB-5 projects, such as Potala Village.  *See supra* § II.B; (*see also* Plea Agreement ¶¶ 7(d)-(i)).  Thus, Mr. Grassmueck has met all three elements of his unjust enrichment claim, and he is alternatively entitled to summary judgment on this basis as well.

In response, Potala Village points only to the 2012 Note and 2015 Note as "legally binding obligation[s] to repay the full amount of the Transfers," which "nets out the 'benefit' acquired."  (Resp. at 12.)  For all the reasons stated above, the 2012 Note and 2015 Note do not prevent the entry of summary judgment here.  *See supra* §§ III.B.2.d, e. In its discovery responses, Potala Village disclaimed any obligation under the 2012 Note, identified no item of value—including the 2012 Note and the 2015 Note—that it exchanged for the transfers, and expressly disputed the assumption the it had received the transfers pursuant to the 2012 Note.  *See supra* § II.B.2.d.  These discovery responses are consistent with Potala Village's denial in its answer that the transfers at issue "were documented as promissory notes."  (Compl. ¶ 11; Answer ¶ 11.)  Finally, if Potala Village did not receive the transfers pursuant to the 2012 Note, as it has repeatedly stated, then any reduction the parties negotiated in the balance due under the 2012 Note by executing the 2015 Note would be unrelated to the transfers as well.  *See supra* § II.B.2.e. Accordingly, the court concludes that the Receiver has satisfied all the elements of his

//

claim for unjust enrichment, and he is alternatively entitled on behalf of the Receivership to summary judgment on this claim as well.

**D. Prejudgment Interest**

In addition to the return of the transfers, Mr. Grassmueck argues that he is entitled to prejudgment interest on thoe transfers. (Mot. at 7.) The court agrees. Mr. Grassmueck is entitled to prejudgment interest on his UFTA claim. *See Thompson v. Hanson*, 239 P.3d 537, 539, 541 n.2 (Wash. 2009) (affirming judgment under UFTA that included award for prejudgment interest). He is also entitled to prejudgment interest on his claim for unjust enrichment. *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 189 P.3d 777, 798 (Wash. Ct. App. 2008) ("[A]n award of prejudgment interest is in the nature of preventing the unjust enrichment of the defendant who has wrongfully delayed payment.") Indeed, "[t]he plaintiff should be compensated for the 'use value' of the money representing his damages for the period of time from his loss to the date of judgment." *Bailie Commc'ns*, 810 P.2d at 19 (quoting *Hansen v. Rothaus*, 730 P.2d 662, 665 (Wash. 1986)). Accordingly, a plaintiff is entitled to prejudgment interest on the damages awarded if the sum is ascertainable or liquidated. *Hansen*, 730 P.2d at 665. The amount of the transfers here is ascertainable: the transfers totalled $914,954.84. *See supra* § II.D.

Potala Village argues that any interest the court awards should be limited by the oral agreement capping the repayment of the 2015 Note at $500,000.00, inclusive of both principle and interest. (Resp. at 13-14.) Potala Village also argues that the court should not calculate prejudgment interest from the date the transfers at issue were complete, but

rather from the date on which repayment of either the 2012 Note or 2015 Note is due. (*See* Resp. at 14-15.)  For all the reasons discussed above, the court declines to rely on either the 2012 Note or the 2015 Note to limit the amount of prejudgment interest it awards to Mr. Grassmueck.  *See supra* §§ III.B.2.d-e.

In addition, the oral agreement capping repayment of the 2015 Note at $500,000.00, inclusive of principle and interest, is unenforceable.  As noted above, the only written document memorializing the oral agreement is an email from Mr. Cohanim, in which he states that "[Mr. Dargey] will accept a cap on interest for Dargey Enterprises's promissory note whereby the note will be considered paid in full at $500K." (Cohanim Decl. ¶ 9, Ex. F.)  Under Washington law, "[a] credit agreement is not enforceable against the creditor unless the agreement is in writing and signed by the creditor."  RCW 19.36.110.  Nevertheless, Potala Village argues that "[a] categorical rule that email communications cannot satisfy the statute of frauds would be oblivious to the nature of modern business communication."  (Resp. at 13 (internal quotation marks omitted) (quoting *Adams v. Fed. Deposit Ins. Corp.*, No. C10-1962-JCC, 2011 WL 13228992, at *4 (W.D. Wash. Sept. 20, 2011).)  The court, however, need not decide whether an email exception may sometimes apply to Washington's statute of frauds because in this instance, it does not.  The email to which Potala Village points was sent by Mr. Cohanim, who is a member of Potala Village, the debtor.  (Cohanim Decl. ¶ 1; *id.* ¶ 9, Ex. F.)  Yet, Washington's statute of frauds requires that the creditor sign a credit agreement.  RCW 19.36.110.  So even if an email communication could satisfy Washington's statute of frauds, it does not here because the email was sent by the debtor

and not the creditor. (*See* Cohanim Decl. ¶ 9, Ex. F.) Thus, there is no signature by the

creditor—electronic or otherwise. Accordingly, the court concludes that the oral

agreement capping Potala Village's liability under the 2015 Note is unenforceable under

RCW 19.36.110.

Mr. Grassmueck asks for an award of prejudgment interest at 12 percent per year.

(Mot. at 7.) Prejudgment interest may be awarded in civil litigation at the statutory

judgment interest rate of 12 percent per year. *See Crest Inc. v. Costco Wholesale Corp.*,

115 P.3d 349, 357 (Wash. Ct. App. 2005) (citing RCW §§ 4.56.110, 19.52.020)

("Prejudgment interest is allowed in civil litigation at the statutory judgment interest

rate . . . when a party to the litigation retains funds rightfully belonging to another and the

amount of the funds at issue is liquidated, that is, the amount at issue can be calculated

with precision and without reliance on opinion or discretion."). Using the date of the last

transfer at issue, which was October 30, 2012, as the date upon which prejudgment

interest should begin to accrue, Mr. Grassmueck calculates that as of March 31, 2018, the

Receivership was entitled to $594,996.39 in prejudgment interest. (Mot. at 7.) He also

calculates that such interest would continue to accrue at the rate of $300.81 per day,

which as of the date this order is signed amounts to a total of $617,557.14 in prejudgment

interest.[16] (*See id.* at 7.) Potala Village does not challenge this calculation. (*See*

*generally* Resp.) Accordingly, based on the undisputed facts and authorities cited above,

---

[16] There are 75 days between March 31, 2018 and that date this order is signed. Seventy-five days multiplied by $300.81 totals $22,560.75. Thus, Mr. Grassmueck's total prejudgment interest award is $617,557.14 ($594,996.39 + $22,560.75).

the court concludes that Mr. Grassmueck is entitled to such an award on behalf of the Receivership on summary judgment.

## IV.    CONCLUSION

Based on the foregoing, the court GRANTS Mr. Grassmueck's motion for summary judgment (Dkt. # 18), and awards the Receivership $914,954.84, along with an award of prejudgment interest in the amount of $617,557.14, for a total award of $1,532,511.98.[17]

Dated this 14th day of June, 2018.

_____
JAMES L. ROBART
United States District Judge

---

[17] Mr. Grassmueck filed an objection to certain portions of Mr. Vecchio's declaration. (*See* Objection (Dkt. # 30); Vecchio Decl.)  The court denies Mr. Grassmueck's objection as moot because even considering the portions of Mr. Vecchio's declaration to which Mr. Grasmueck objects, the court still grants Mr. Grassmueck's motion for summary judgment.